The plaintiff, in June, 1889, was a brakeman for the defendant, and while in the discharge of his duty on the top of a moving train, he was hit by a low bridge and severely injured, and he brought this action to recover his damages against the defendant. The defendant denied the allegations of negligence against it, and alleged contributory negligence on the part of the plaintiff, and upon the trial he was non-suited. The propriety of that non-suit is the matter for our determination.
At the time of the accident there were fifty-four cars in the train, and there were two brakemen assigned to duty upon the train. It was the duty of the plaintiff to be on top of the cars, ready to respond to calls for brakes, and to keep watch over the train to see that it did not part and run together. He was required to be in position so that if the train broke he could observe it, and at once signal the engineer. At the time of the accident the train was at a place in the road where there was a reverse curve, and more than ordinary risk from that circumstance that it might break. The distance from the rail to the bottom of the bridge was sixteen feet and four inches. The top of the car was twelve feet and a quarter of an inch above the track, and the plaintiff was five feet and ten inches high. The plaintiff had been in the employment of the defendant for several weeks at the time of the accident, and had daily passed over the road under the bridge, and had thus made about thirty-one trips over the road. He must have known of the existence of the bridge, and must repeatedly have noticed it. When he passed under the bridge at prior times he may have been facing it, and may thus have avoided the danger, or he may have been sitting down on top of the cars, and thus been out of reach of the bridge. At the time of the accident he was upon a very long train, intent upon the discharge of his duty, with his face toward the rear of the train, in a position to most effectually discharge his duty, and thus his back was toward the bridge. He was not at the time aware that he was approaching a place of danger, and had no warning of the bridge. Indeed the *Page 305 
bridge was not in his mind, and the trial judge non-suited him because he did not at the time have the bridge in his mind and thus guard himself against the danger of injury.
We do not think that one thus situated can, as matter of law, be charged with negligence because he did not take notice of the fact that he was approaching the bridge, and thus know that he was in a place of danger. He was in a place where there was danger that the train might break in two, and he was intent upon the discharge of his duty. It cannot be said that a brakeman is, as matter of law, careless because he does not bear constantly in mind the precise location where the train is and where every bridge is.
There is another fact entitled to some weight upon this branch of the plaintiff's case. It is provided by section two of chapter 439 of the Laws of 1884, that every steam railroad shall within six months after the passage of the act, erect and thereafter maintain suitable warning signals at every low bridge or structure which crosses the railroad above the track, where such warning signals may be necessary for the protection of employees upon the top of cars from injury. This railroad had erected warning signals, called telltales, on the sides of its bridges by putting up crossbars at some distance from each bridge over the tracks with wires hanging down from the same which, by striking a brakeman on top of the cars, would warn him of his approach to the bridge. The plaintiff knew of this requirement and of the existence of these telltales at the bridges, and while he could not omit on that account all care for his own safety, yet the absence of telltales would be one of the circumstances proper for the jury to consider in determining the question of his negligence.
The cases of McGrath v. N.Y.C. H.R.R.R. Co. (59 N.Y. 468) ; S.C. (63 id. 522); Cullen v. Del. Hud. Canal Co. (113 id. 667), and Rodrian v. N.Y., N.H. H.R.R. Co. (125 id. 526), are not applicable to such a case as this. They have their application to a traveler upon a highway crossing a railroad. He approaches a known place of danger, and is, therefore, bound to be vigilant in the use of his senses *Page 306 
for his own safety, without any reliance upon the statutory warning by bell or whistle, or the mere absence of a flagman. But a brakeman on the top of a moving train cannot always be expected to know when he is approaching a low bridge. His duties may require his attention to the rear of his train, away from the place of danger, and he cannot be expected to bear constantly in mind and to know where the train is, or where a bridge is. He knows that if the statutory requirement is obeyed by the railroad company, and the telltales are kept in order, they will always warn him of danger, and he cannot, therefore, be charged with carelessness if he places some reliance upon them. Suppose some statute or rule of the company requires the engineer always to blow a whistle for the express purpose of warning the brakeman of the approach to a low bridge, could he not place some reliance upon that circumstance, and omit that degree of care which he would otherwise take for his own safety, without the imputation of culpable negligence? There is no principle or authority which requires this question to be answered in the negative.
The plaintiff calls our attention to the case of Kane v.Northern Central R.R. Co. (128 U.S. 91), as an authority in his favor upon this branch of the case, and it has some bearing. The defendant calls our attention to the case of Williams v. D.,L. W.R.R. Co. (116 N.Y. 628), as an authority in its favor. It must be conceded that the latter case goes far to uphold a non-suit upon such facts as we have here. But it was a border case, decided against the plaintiff by a divided court; and it is distinguishable from this case in that the brakeman there knew that he was approaching the bridge, and when near the bridge, turned his back towards it, knowing, or bound to know, as the court held, that it was a low bridge. Under such circumstances, it was held that he was guilty of contributory negligence.
We think, therefore, that the trial judge erred in holding as matter of law that the plaintiff in this case was guilty of contributory negligence. All the evidence bearing upon that branch of his case should have been submitted to the jury. *Page 307 
It cannot well be denied that there was sufficient evidence for the jury as to the defendant's negligence. It was proved in this case that the telltale was put up in the usual form fifty-one feet from this bridge, and that it was out of order, in that some of the wires were out of place and wound around the crossbar, so that a brakeman might pass under it without being warned of his approach to the bridge. It is manifestly the duty of the company, not only to put up these telltales, but to use reasonable care that they are kept in order. It should be the duty of some one connected with the railroad to pay some attention to them and see that they are kept in order to answer the purpose of the statute.
Still further, the statute requires suitable warning signals. Whether a signal of this kind erected so close to the bridge is suitable for the purpose intended is a question for the jury. The train was running at the rate of twelve or fifteen miles an hour, and a jury might well find that a telltale so near to the bridge is not adequate to answer the purpose of the statute. It should be placed so far from the bridge that after giving the warning there is time for the brakeman on top of the train to avoid the danger. Here, notwithstanding the defective condition of this telltale, if it had been placed at a greater distance from the bridge it is quite probable from the evidence, that while it did not touch the plaintiff, yet that he would have seen it, and would thus have been warned before he reached the bridge, as he did see it just as the bridge struck him.
We, therefore, think there was evidence enough for submission to the jury, upon the question of defendant's negligence.
This question was put to one of the plaintiff's witnesses: "What is the usual and ordinary distance to erect these telltales from the bridge, or low structure?" This was objected to on the part of the defendant as incompetent, and the objection was sustained. We think this question was proper. It was competent for the plaintiff to show in some way that this telltale was placed too near the bridge to answer the purpose *Page 308 
of the statute, and upon that point he could properly show how this road, and possibly other roads, constructed its telltales, and at what distance from the bridges.
The judgment should be reversed, and a new trial granted, costs to abide the event.
All concur.
Judgment reversed.